The LIBMAN COMPANY,
Plaintiff–Appellant,

v.

QUICKIE MANUFACTURING
CORPORATION, Defendant–
Cross Appellant.

Nos. 03–1064, 03–1065.

United States Court of Appeals,
Federal Circuit.

Decided Aug. 27, 2003.

Rehearing Denied Oct. 3, 2003.

Before RADER, BRYSON, and GAJARSA, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Central District of Illinois determined that the Libman Company infringed Quickie Manufacturing Corporation's (Quickie's) U.S. Patent No. 5,502,862 ('862 patent) (issued April 2, 1996). *The Libman Co. v. Quickie Mfg. Corp.*, No. 00–CV–2279 (C.D.Ill. Sep. 30, 2002). Because the trial court correctly construed the claims, this court *affirms*.

### I.

Libman and Quickie manufacture push brooms. Push brooms often feature a handle with threads on one end to attach the brush. To prevent the handle from unscrewing during use, the technology in this case features a hexagonal locking bracket that prevents the handle from twisting loose.

Libman markets the Sure Lock bracket. This product bolts the handle to the brush with a "big red bolt" that passes through the bracket into one of two opposing threaded holes that appear at the top of most broom brushes. Figs. 1 and 9 of U.S. Patent No. 6,393,647 (issued May 28, 2002) depict the Sure Lock bracket:

In Libman's Sure Lock bracket, the "big red bolt" 18 passes through aperture 60 and threads into the unused brush hole to secure the bracket to the brush. The broom handle fits into the notched opening opposite aperture 60.

Quickie owns the '862 patent covering a bracket that attaches to the top of a broom brush. The bracket has an opening that surrounds the broom handle's hexagonal section to lock the handle. Figs. 2 and 8 of the '862 patent show an embodiment:

Claims 1–6 of the '862 patent are at issue. Claim 1, the only independent claim, is representative:

1. A handle locking bracket for use on a hand cleaning implement having a separable elongated handle with a radially positioned, multi-sided section located adjacent to attachment means at the end of the handle, and a cleaning head member with receiving means to accept and form a joint with the handle end attachment means, said bracket comprising:

a. an integral unitary bracket body;

b. *means for attaching the bracket* body in an upright position to the cleaning head member;

c. *multi-sided bracket opening means* through the bracket body, said multi-sided opening means being exactly sized to receive, geometrically conform with, and *surround* the multi-sided section of the handle, whereby upon positioning of the multi-sided opening means over the multi-sided section of the handle, the sides of the multi-sided opening means surround, conform with, and are in close proximity to the sides of the multi-sided section of the handle to form a static lock means which retains in place and *completely immobilizes* the joint between the cleaning head member and handle end attachment means.

'862 patent, col. 7, ll. 43–65 (emphasis added).

In September 2000, Quickie wrote Libman stating that Libman's product infringed the '862 patent and asking Libman to "cease and desist" from further manufacture and sale of the Sure Lock product. Libman sued for a declaratory judgment of non-infringement and invalidity. Quickie counterclaimed for infringement, seeking injunctive relief, damages, and attorney fees.

In a bench trial, the district court construed the claims of the '862 patent. The district court construed "means for attaching the bracket body in an upright position" to mean that, when attached, the bracket opening lines up with the broom brush's threaded hole. The district court construed "surround" to mean that the bracket encloses the broom handle on all sides.

Based on that construction, the district court found that Sure Lock did not infringe literally, because the "big red bolt" did not maintain the bracket in an upright position and the bracket did not enclose the broom handle on all sides. Thus, Sure Lock did not satisfy part (b) of claim 1, which recites a "means for attaching the bracket body in an upright position" and did not satisfy part (c) of claim 1, because of the limitation "surround."

Under the doctrine of equivalents, however, the district court found that Libman's Sure Lock infringed. The district court rejected Libman's arguments that the '862 patent was invalid, and granted a permanent injunction to halt the infringement. The district court found no willful infringement and denied attorney fees (Quickie had waived its damages claims).

Libman appealed to this court. Quickie cross-appealed, challenging the district court's construction of the term "surround" and its denial of attorney fees.

## II.

This court reviews a district court's claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed.Cir.1998) (*en banc*). Infringement under the doctrine of equivalents is a question of fact. *J & M Corp. v. Harley–Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed.Cir.2001). Willful infringement, which must be proven by clear and convincing evidence, is a question of fact that this court reviews for clear error. *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1413 (Fed.Cir.1996). Although the determination of whether a case is exceptional is a question of fact reviewed for clear error, this court reviews a district court's decision to award attorney fees in an exceptional case only for abuses of discretion. *Cybor Corp.*, 138 F.3d at 1460.

## III.

Libman does not appeal the district court's claim construction and its finding of no literal infringement. Libman only appeals the district court's finding of infringement under the doctrine of equivalents, and its finding that the '862 patent is not invalid over the '540 patent.

█ The district court considered that the "multi-sided bracket opening means" of part (c) of claim 1 contained the word "means." The district court correctly concluded that the claim recited sufficiently detailed structure that the term was not a means-plus-function term under the sixth paragraph of 35 U.S.C. § 112. *See Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1304 (Fed.Cir.1999).

█ The district court found that Sure Lock's notched opening would not completely "surround" the multi-sided section of a broom handle, and thus would not literally meet the limitations of part (c) of claim 1. But the district court reasoned that the notched opening performs substantially the same function in substantially the same way to achieve substantially the same result as structure corresponding to the "bracket opening means" of part (c) disclosed in the '862 patent. The district court concluded that Sure Lock's notched opening met the limitations of part (c) under the doctrine of equivalents.

Libman contends that the Sure Lock bracket has no equivalent to the bracing function expressed by the term "completely immobilizes" in part (c). Specifically, claim 1 requires that the opening means "completely immobilizes the joint between the cleaning head member and handle end attachment means." According to Libman, Sure Lock's notched opening operates in a substantially different way to achieve a substantially different result, because the bracket goes only partway around the broom handle and leaves the handle unsupported in the direction of sweeping during use. Libman contends that the district court did not consider the word "completely" in the phrase "completely immobilizes."

To the contrary, the district court specifically addressed this point in its opinion, stating that Libman presented no evidence in support of its "completely immobilizes"

contention. Moreover, in its capacity as a fact-finder, the district court noted that the Sure Lock broom included as demonstrative evidence in the case did not bend under pressure. Thus, the district court specifically considered and rejected Libman's argument. Because the record contains no evidence that Sure Lock's bracket does not completely immobilize the broom handle joint, the district court did not clearly err. This court therefore affirms the district court's conclusion that Sure Lock meets the limitations of part(c).

Libman next argues that the '862 patent is invalid over U.S. Patent No. 3,183,540 (the '540 patent) (issued May 18, 1965). Libman contends that if the "opening means" of the '862 claims encompasses a U-shaped opening under the doctrine of equivalents, the '540 patent's bracket meets all limitations of the claims of the '862 patent.

In its opinion, the district court stated that it did not admit the '540 patent into evidence. Libman has not specifically appealed that ruling and has not argued that the district court abused its discretion, *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547 (Fed.Cir.1994), in doing so. The district court also noted that Libman did not argue at trial that the '540 patent disclosed all limitations of the '862 patent's claims as required for anticipation. *See Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir.1995). Because invalidity over the '540 patent was not properly raised with the district court, this court need not consider the issue. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1326 (Fed.Cir. 2001).

## IV.

Quickie's cross-appeal challenges the district court's construction of the term "surround" and its denial of attorney fees. The district court construed "surround" to mean enclosing the broom handle on all sides. The district court determined the plain meaning of "surround" based on a definition in the 1995 edition of Webster's II New College Dictionary, contemporaneous with the June 26, 1995, filing date of the '862 patent. That dictionary defined "surround" as to "encircle on all sides of simultaneously." The district court found no other definition in the disclosure of the '862 patent and construed "surround" to mean enclosing on all sides. Quickie argues that the district court ignored Quickie's alternative definition of "surround" as meaning "to cause to be encircled on all or nearly all sides" in a 1984 edition of the New World Dictionary.

Although a dictionary is only one tool among many that informs the meaning of claim terms, this court detects no error in the district court's construction of "surround." In this case, the district court properly used a dictionary definition as one indicator of claim meaning. *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202–03 (2002). More important, the context of the claim supports the district court's construction. Claim 1 states that "the sides of the multi-sided opening means surround, conform with, and are in close proximity to the sides of the multi-sided section of the handle." By specifically referring to "the sides," claim 1 suggests enclosure of all sides of the multi-sided section. The disclosure of the '862 patent further confirms the district court's interpretation by exclusively disclosing opening means that completely surround the broom handle. *See, e.g.,* '862 patent, col. 3, ll. 16–19 ("the multi-sided bracket opening ... can be of triangular, rectangular, or even oval configuration"); *id.,* Figs. 2–4, and 8 (showing embodiments with bracket openings that completely surround the broom handle). The record supports

the district court's construction of "surround."

■ The district court also did not clearly err in finding no willful infringement and that the case was not exceptional, which is a prerequisite to awarding attorney fees. *See* 35 U.S.C. § 285 (2000). The record does not show clear and convincing evidence of willful infringement. Instead, the record shows that Libman attempted to design around the '862 patent. For example, on the advice of a patent attorney, Libman modified the bracket opening to a U-shape from its original form completely surrounding the broom handle. With ample support from the record, the district court correctly found the case was not exceptional and denied attorney fees.